FILED '08 DEC 29 1508USDC-ORP

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| DONALD MARK, | CV. 07-1593-AC |
| Plaintiff, | FINDINGS AND RECOMMENDATION |
| v. | |
| MICHAEL J. ASTRUE, Commissioner of Social Security, | |
| Defendant. | |

ACOSTA, Magistrate Judge:

Claimant Donald Mark ("Claimant") seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying his application for Supplemental Security Income ("SSI") disability benefits under Title XVI of the Social Security Act ("SSA"). *See*

FINDINGS & RECOMMENDATION       1       {KPR}

42 U.S.C. §§ 1381-83f (2008). This court has jurisdiction to review the Commissioner's decision pursuant to 42 U.S.C. § 405(g). Following a careful review of the record, the court concludes that the decision of the Commissioner should be affirmed.

*Procedural History*

Claimant filed for SSI benefits on July 27, 2004, alleging a disability onset date of October 15, 2002. The claim was denied initially and on reconsideration. On January 23, 2007, a hearing was held before an Administrative Law Judge ("ALJ"), who issued a decision on May 24, 2007, finding Claimant not disabled. Claimant requested review of this decision on May 30, 2007. The Appeals Council denied this request making the ALJ's decision the Commissioner's final decision. Claimant filed for review of the final decision in this court on October 24, 2007.

*Standard of Review*

This court must affirm the Commissioner's decision if it is based on proper legal standards and the findings are supported by substantial evidence in the record as a whole. 42 U.S.C. § 405(g); *see also Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Tylitzki v. Shalala*, 999 F.2d 1411, 1413 (9th Cir. 1993). The court must weigh "both the evidence that supports and detracts from the [Commissioner's] conclusion." *Martinez v. Heckler*, 807 F.2d 771, 772 (9th Cir. 1986). The Commissioner's decision must be upheld if it is a rational interpretation of the evidence, even if there are other possible rational interpretations. *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989); *Andrews*, 53 F.3d at 1039-1040. The reviewing court may not substitute its judgment for that of the Commissioner. *Robbins v. SSA*, 466 F.3d 880, 882 (9th Cir. 2006).

The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities. *Andrews*, 53 F.3d at 1039. In determining a claimant's residual functional capacity ("RFC"), an ALJ must consider all relevant evidence in the record, including, *inter alia,* medical records, lay evidence, and "the effects of symptoms, including pain, that are reasonably attributed to a medically determinable impairment." *Robbins*, 466 F.3d at 883, *citing* SSR 96-8p, 1996 WL 374184, at *5; 20 C.F.R. §§ 404.1545(a)(3), 416.945(a)(3); *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir.1996).

*Summary of the ALJ's Findings*

The ALJ engaged in the five-step "sequential evaluation" process when she evaluated Claimant's disability, as required. *See* C.F.R. § 416.920; *see also Bowen v. Yuckert*, 482 U.S. 137, 140 (1987).

I. Steps One and Two

At Step One, the ALJ found that Claimant has not engaged in substantial gainful activity since the onset of his alleged disability, on October 15, 2002. At Step Two, the ALJ found that Claimant suffers from two severe impairments, back pain and chronic alcohol abuse, a non-severe impairment, hand pain, and an impairment that is not expected to last for twelve continuous months, a fractured clavicle.

*a. Back Pain*

In June 2003, a medical form from Lane County Corrections Department noted that Claimant "had a history of 'back slipped/bulging disc[.]'" (Tr. 16.) Claimant reported an on-the-job back injury that had been treated with cortisone shots. On June 30, 2004, a chart note revealed a diagnosis of chronic back pain. In September 2004, an x-ray "showed spondylotic and discogenic degenerative

changes in the thoracic spine and degenerative disease . . . in the lumbar spine." *Id.* Claimant testified that he is not treated for this condition regularly, though he visits an emergency room periodically when the pain becomes too severe and typically receives narcotic pain relievers. The record shows a single hospital visit in January 2006, where a chart note listed a diagnosis of low back strain.

  b. *Chronic Alcohol Abuse*

Claimant arrived at the hearing smelling of alcohol and admitted that he had been drinking prior to the hearing, which he attributed to his anxiety about the hearing. Claimant reported a weekly intake of seven beers, though he also stated "that his liver cannot stand the use of alcohol . . . ." *Id.* Claimant was treated for alcohol abuse at an outpatient treatment center and has attended Alcoholics Anonymous, as recently as ten months ago. He testified that "alcohol had interfered with his performance in an auto repair job." (Tr. 17.)

  c. *Hand Pain*

Claimant injured his hand on January 15, 2002, which limited his ability to make a fist and to grasp objects. An examination in December 2004, by Dr. Brewster, "found no manipulative restrictions so the limitation on grasping that was present in 2002 apparently resolved over time." (Tr. 17.)

  d. *Clavicle Fracture*

In May 2006, Claimant fractured his clavicle when he fell from his bicycle. This impairment should heal within one year.

II. Step Three

At Step Three, the ALJ concluded that Claimant did not "have an impairment or combination

of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 . . . ." (Tr. 17.) In particular, the ALJ found that Claimant's impairments did not meet the listing for disorders of the spine, section 1.04, or chronic alcohol abuse, section 12.09.

## III. Residual Functional Capacity

The ALJ outlined Claimant's residual functional capacity ("RFC"). Claimant is capable of lifting; can sit, stand, and walk, each for six hours, for a combined total of eight hours; has non-exertional limitations preventing overhead lifting with the left arm and exposure to hazards due to alcohol abuse; and can frequently bend, stoop, crouch, and crawl. (Tr. 17-18.) In evaluating Claimant's subjective complaints of pain, the ALJ performed a two-factor analysis: (1) whether an underlying physical or mental impairment could reasonably produce the pain or other symptoms, and (2) the extent of Claimant's limitations by evaluating the intensity, persistence, and limiting effect of the impairments. The second determination was aided by the objective evidence in the record and a list of factors set forth in the regulations at 20 C.F.R. 416.929(c).

The ALJ concluded that Claimant's "medically determinable impairments could reasonably be expected to produce the alleged symptoms, but that [Claimant's] statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible." (Tr. 19.) The ALJ gave several reasons for questioning Claimant's credibility. First, Claimant's level of functioning conflicted with his allegations of disabling pain. The ALJ observed that Claimant performs all activities of self-care and cleans his home once a week, including doing laundry. Claimant can watch television for four hours a day, read for two hours a day, and use the computer for two hours a day. Claimant can stand for four hours during an eight hour day. Claimant can walk three to four blocks daily and is also capable of riding the bus. Second, the ALJ found

inconsistencies in Claimant's representations. For example, Claimant stated that he could not pick objects off the floor, then stated that he can if he bends at the knee. Claimant stated that he was not able to not take things off shelves above his head, but Dr. Brewster's examination found a normal range of motion in Claimant's shoulders. Claimant said at one point that he could only sit for three or four minutes, another time that he could sit for thirty minutes, and Dr. Brewster observed him sitting comfortably for the duration of his examination. These and other findings led Dr. Brewster to suggest that Claimant may magnify his symptoms. Third, the ALJ stated that Claimant's "minimalization of his alcohol consumption did not help his credibility." (Tr. 20.) Fourth, the ALJ observed that objective medical findings do not support Claimant's allegations of back pain, limited range of motion, and dizziness. Finally, Claimant's credibility was further undermined by his testimony that he could not afford the monthly $6.00 premium for the Oregon Health Plan, but had money to spend on cigarettes and probably beer as well.

The ALJ also evaluated lay witness testimony given by Claimant's mother. Claimant lives in a trailer in his mother's driveway. According to his mother, Claimant performs several tasks and activities including mowing the lawn, washing dishes, walking, riding a bike, and occasionally going fishing. Claimant is able to pay attention, follow instructions, and get along with authority figures. The ALJ concluded that, overall, "[t]he information contained in this written statement reveals that [Claimant] is able to perform many tasks and activities, despite his complaints of pain." (Tr. 20.)

IV.    Steps Four and Five

At Step Four, the ALJ found that Claimant was "capable of performing past relevant work as a quality control inspector." (Tr. 20.) The ALJ presented the VE with a hypothetical claimant possessing Claimant's characteristics and RFC. The VE testified that this hypothetical claimant

could perform work as a quality control inspector. Next, the ALJ proposed the same hypothetical claimant, but "added restricted exposure to moving equipment due to alcohol consumption." (Tr. 21.) The VE testified that the hypothetical claimant with the added restriction could still perform the work of a quality control inspector. The ALJ then added a restriction that would prevent the hypothetical claimant from constant but not frequent "bending stooping, crouching, and crawling." (Tr. 21.) The VE testified that the hypothetical claimant could still perform the work of a quality control inspector. The ALJ concluded that "[i]n comparing [Claimant's] [RFC] with the physical and mental demands of this work, [the ALJ found] that [Claimant] is able to perform the job of quality control inspector as actually performed." (Tr. 21.) The ALJ supported this finding with Claimant's testimony that he had performed the job for one and one-half years, was required to lift a five gallon bucket of paint only occasionally, and the job mostly required walking and standing, all of which the Claimant is capable of doing. The ALJ concluded that because Claimant could perform past relevant work he was not disabled. Because Claimant could perform past relevant work, the ALJ did not reach Step Five.

*Discussion*

Claimant objects to the ALJs findings on the following four grounds: (1) the ALJ failed to fully develop the record with regard to Claimant's headaches, (2) the ALJ improperly rejected Claimant's testimony based on an incorrect evaluation of Claimant's credibility, (3) the ALJ improperly rejected lay witness testimony, and (4) the ALJ did not consider the combined effect of Claimant's impairments. The court will address each ground in turn.

I.  <u>The ALJ did not fail to properly evaluate the impact of Claimant's headaches.</u>

According to Claimant, the ALJ failed to consider the testimony of Claimant, his mother, and

the VE regarding Claimant's headaches. In addition, the ALJ failed to develop the record and relied on Dr. Brewster, who failed to address Claimant's headaches. For these reasons, the ALJ failed to adequately consider Claimant's headaches when she determined that he was not disabled.

In his brief, Claimant cited his testimony that he suffers from severe headaches once or twice a week; the headaches are completely debilitating; medication does not relieve the headaches; and, because of the headaches, Claimant "is unable to see, unable to function, and needs to relax." (Plaintiff's Brief ("Pl.'s Br.") 7.) Claimant also cited his mother's testimony that he suffers from daily headaches. According to Claimant, the ALJ gave no reasons for rejecting the testimony of Claimant or his mother.

Claimant further alleges that the ALJ questioned the VE as to how frequent headaches might affect Claimant's RFC, and the VE stated that such headaches would prevent Claimant from performing past relevant work. Despite this testimony, the ALJ "failed to ask a single physician about [Claimant's] headache impairment." (Pl.'s Br. 8.) Claimant points out that Dr. Brewster was the only physician who examined him and, although Dr. Brewster did not address Claimant's headaches, the ALJ adopted his conclusions in their entirety. The ALJ should have ordered further evaluation of Claimant's headache impairment before making his disability finding. In failing to do so, the ALJ breached his duty to fully and fairly develop the record.

The Commissioner responds that Claimant did not meet his burden to establish that headaches are an impairment. First, Claimant must establish impairments by way of medical evidence. There is no objective evidence of headaches; Claimant was neither diagnosed with headaches, nor did he report headaches to Dr. Brewster when asked if he had any other medical problems. (Defendant's ("Def.'s") Br. 5.) The Commissioner points out that, as an internist, Dr.

Brewster was qualified to address headaches, but Claimant failed to report that he suffered from debilitating headaches. According to the Commissioner, earlier medical reports do not disclose previous complaints of headaches and Claimant first complained of headaches at the administrative hearing. The Commissioner argues that requiring the ALJ to develop the record under these circumstances would unfairly shift Claimant's burden to the ALJ. Finally, the Commissioner asserts that including the headache limitation in a hypothetical does not mean the impairment was genuine and the ALJ is free to accept or reject restrictions posed in a hypothetical, based on whether they are supported by substantial evidence.

"An ALJ's duty to develop the record further is triggered only when there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence." *Mayes v. Massanari*, 276 F.3d 453, (9th Cir. 2001) (citing *Tonapetyan v. Halter*, 242 F.3d 1144, 1150 (9th Cir. 2001)). However, a claimant also bears the burden of establishing a disability. *See* 42 U.S.C. § 423(d)(5) (Supp. 2001) ("An individual shall not be considered to be under a disability unless he furnishes such medical and other evidence of the existence thereof as the Secretary may require."). Accordingly, the ALJ has no duty to develop the record regarding an impairment the existence of which is not reflected in the record as a whole.

Medical evidence of Claimant's headaches is virtually non-existent. First, Claimant filled out a pain questionnaire on August 29, 2004. Claimant stated that he had "deep shooting pain down the back of both legs, starting with the lower back and [radiating] both down into [his] legs and neck." (Tr. 146.) He further specified the location of the pain as "lower back and neck mostly," but also down in his legs and up into the base of his skull. (Tr. 146.) However, Claimant makes no specific mention of headaches, beyond the neck pain that radiated into the base of his skull. On

December 11, 2004, Dr. Brewster examined Claimant. In his report, Dr. Brewster identified Claimant's chief complaints as back pain, neck pain, and hand/joint pain. (Tr. 188.) In Claimant's statement concerning his neck pain, he does not mention the pain radiating into his skull, nor does he mention headaches themselves. In his conclusions, Dr. Brewster noted that, despite Claimant's alleged limitation flexing his neck and raising his arms above his head, Claimant "exhibited normal range of motion of neck and shoulder without obvious discomfort." (Tr. 193.) Dr. Brewster makes no specific mention of headaches or complaints of headaches.

In a form titled "Disability Report – Appeal," dated February 25, 2005, Claimant stated that since he completed his disability report, his condition has changed. In part, Claimant wrote that he gets "headaches in the back of [his] head when [his] neck starts hurting. They last sometimes as much as all day. This happens several times per month." (Tr. 155.) Claimant reported that these changes occurred in approximately August of 2004.

In an August 21, 2006, letter regarding her son's application for disability benefits, Claimant's mother wrote: "Headaches are a daily problem." (Tr. 165.) Claimant himself testified at his administrative hearing that he has "throbbing" headaches once or twice a week. When he has the headaches, Claimant allegedly does not want to move and has difficulty seeing or wanting to see. (Tr. 279.) The hearing took place on September 6, 2006. At the same hearing, the ALJ presented the VE with a hypothetical claimant. When the ALJ included "severe headaches" as a limitation causing the hypothetical individual to miss two days of work per week, the VE testified that the hypothetical individual would be precluded from employment. (Tr. 284.)

The record discloses that evidence of Claimant's headaches consists of only Claimant's subjective complaints and his mother's written testimony. The Ninth Circuit has held that "[i]n

deciding whether to accept a claimant's subjective symptom testimony, an ALJ must perform two stages of analysis: the *Cotton* analysis and an analysis of the credibility of the claimant's testimony regarding the severity of her symptoms." *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996). The first stage of analysis, the *Cotton* test, "imposes only two requirements on the claimant: (1) she must produce objective medical evidence of an impairment or impairments; and (2) she must show that the impairment or combination of impairments *could reasonably be expected to* (not that it did in fact) produce some degree of symptom." *Id.* at 1282. If the claimant is able to meet this burden, the ALJ can reject a claimant's testimony as to the severity of the symptoms only for clear and convincing reasons, based on specific findings in the record. *See Smolen*, 80 F.3d at 1283-1284 ("Once a claimant meets the Cotton test and there is no affirmative evidence suggesting she is malingering, the ALJ may reject the claimant's testimony regarding the severity of her symptoms only if he makes specific findings stating clear and convincing reasons for doing so. The ALJ must state specifically which symptom testimony is not credible and what facts in the record lead to that conclusion.") (citing *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1903)).

Strictly speaking, Claimant fails to meet the first requirement of the *Cotton* test because he produces no objective medical evidence of headaches. However, if the headaches arise from neck pain, as the subjective record evidence suggests, Claimant may meet the burden imposed by the *Cotton* test if there is an objective basis for his claim of neck pain. The only potential for objective evidence of Claimant's neck pain is set forth in Claimant's self-report to Dr. Brewster. Under the heading, "History," a section for which Claimant was the historian, Dr. Brewster writes: "He had x-rays of the neck in October that showed loss of curvature" (Tr. 189), but there is no x-ray or x-ray report in the evidentiary record. Accordingly, there does not appear to be any objective medical

evidence of neck pain either. Based on the lack of objective medical evidence in the record, the ALJ was justified in finding that Claimant failed to meet his burden to establish that he suffered from neck pain and headaches. It follows that the ALJ was not required to develop the record with regard to headaches because the record, containing only subjective complaints of pain, was not ambiguous.

II.     The ALJ properly assessed Claimant's credibility.

The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities. *Andrews v. Shalala,* 53 F.3d 1035, 1039 (9th Cir. 1995). However, the ALJ's findings must be supported by specific, cogent reasons. *Reddick v. Chater,* 157 F.3d 715, 722 (9th Cir. 1998). Unless there is affirmative evidence showing that the claimant is malingering, the Commissioner's reason for rejecting the claimant's testimony must be "clear and convincing." *Id.* The ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints and the evidence upon which the ALJ relies must be substantial. *Reddick,* 157 F.3d at 722, 724. *See also Holohan v. Massinari,* 246 F3d 1195, 1208 (9th Cir. 2001). General findings (e.g., that the record in general indicates improvement) are an insufficient basis to support an adverse credibility determination. *Reddick,* 157 F.3d at 722. The ALJ must make a credibility determination with findings sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony. *Thomas v. Barnhart,* 278 F3d 947, 958 (9th Cir 2002).

In her opinion, the ALJ gave several reasons for finding Claimant not credible, including inconsistencies in stated limitations and activities of daily living, inconsistencies in overall testimony, minimization of alcohol abuse, non-credible claims about his finances, and lack of objective medical support for certain of his claimed impairments. *See supra* at 5-6. These reasons are clear, convincing, and supported by specific findings based on substantial evidence in the record.

Therefore, the ALJ's credibility determination was appropriate.

III.  The ALJ properly assessed lay witness testimony.

Claimant also argues that the ALJ improperly rejected his mother's testimony regarding his headaches. Claimant is correct that the ALJ did not explicitly address his mother's allegation that Claimant's "[h]eadaches are a daily problem." (Tr. 165.) The ALJ characterized her testimony as both referencing Claimant's pain but also demonstrating that Claimant "[was] able to perform many tasks and activities, despite his complaints of pain." (Tr. 20.) To the extent that headaches are an element of Claimant's pain, the ALJ did not disregard this testimony.

Furthermore, the ALJ is not required to address allegations not supported by substantial evidence in the record. As discussed above, Claimant has produced no objective medical evidence of headaches and thus the ALJ properly disregarded this claimed impairment. Accordingly, the ALJ was not required to address this portion of Claimant's mother's testimony.

IV.  The ALJ's assessment of the Claimant's combined impact of impairments was correct.

Claimant's alleges that the ALJ failed to consider the combined impact of his impairments. This argument is premised on his allegation that the ALJ failed to consider or develop the record with regard to Claimant's headaches. Based on the court's conclusions above, the ALJ was not required to consider headaches in analyzing the combined impact of Claimant's impairments and, accordingly, did not err.

*Conclusion*

For the reasons set forth above, the decision of the Commissioner should be affirmed.

*Scheduling Order*

The above Findings and Recommendation will be referred to a United States District Judge

for review. Objections, if any, are due no later than January 12, 2009. If no objections are filed, review of the Findings and Recommendation will go under advisement on that date.

If objections are filed, any party may file a response within fourteen days after the date the objections are filed. Review of the Findings and Recommendation will go under advisement when the response is due or filed, whichever date is earlier.

DATED this 29th day of December, 2008.

JOHN V. ACOSTA
United States Magistrate Judge